Good morning, Your Honors. My name is Lester Marston. I'm here today representing the Chemehuevi Indian Tribe and the individual tribal members that were issued traffic citations in this case. I would like to reserve five minutes of my time for rebuttal. In 1907, the Secretary of the Interior issued an order, and in that order he established the boundaries of the Chemehuevi Indian Reservation, and he expressly reserved and set aside the eastern one-half of Township 5, Range 24 North, San Bernardino, Meridian. That eastern one-half of the township included a number of sections, including Section 36. The Secretary issued that order pursuant to recommendations and report by the Commissioner of Indian Affairs and C.E. Kelsey, a special agent appointed by the Commission of Indians in California, including the Chemehuevi. Mr. Kelsey issued three reports after meeting with the Chemehuevis in person, investigating the lands that they occupied, and determining that the best thing for them was to establish a reservation for them on the lands that they had occupied since time immemorial, including Section 36. The Secretary's order over the last 111 years has been upheld, confirmed, and ratified by the Congress of the United States, by the United States Supreme Court, and by the President of the United States acting through the Department of the Interior. Not once, but twice, Congress has ratified and approved what the Secretary did by issuing the order. Less than 20 years after the Secretary issued the order, Congress enacted 25 U.S.C. Section 398D that expressly states that the boundaries of an Indian reservation created by the President, or in this case the Secretary, exercising the inherent authority of the President under the Midwest oil doctrine, could not be changed, not by the courts, not by the President, not by the Secretary, but only by an act of Congress. I'm curious, in this case, what relief do you seek from us on this appeal? Well, we brought this action originally, Your Honor. No, I understand, and a summary judgment was granted against you. To join the Sheriff and his deputies from stopping tribal members. Well, the reason I ask that is, as I read your brief, you suggest simply that fact issues exist and we should remand this case to the district court. Are you instead asking that we should grant summary judgment in your favor? Well, your standard of review is de novo. Well, I understand our standard, I'm not asking what our, I know what our standard of review are. I'm asking, I'm looking at your brief and I'm trying to figure out what it is that you're asking us to do. Let's assume I agree with you about everything you've said so far. Should I, should I, should I be remanding the case to the district court and tell it that it made a mistake in not looking at all your evidence, or should, are you saying that we should direct the district court to grant judgment in your favor? I think you should direct the district court to... Of course you want that. My question is, have you asked for that? Well, I think we have, Your Honor. What we're stating is that, that in your de novo review, you can look at the evidence yourself. You can see that the Secretary issued the order. He established the boundaries. He included section 36 within those boundaries. Yeah, but isn't the issue that this had been previously given to the state of California? He couldn't give, he couldn't give it because it had been previously, by statute, given to the state of California and the land was, belonged to the state of California and it wasn't for the Secretary to give away, in effect. We, there's no doubt that, that our position is that the state of California did not get a patent to section 36, that the patent was erroneously issued by the, and all you have to do is look at the clear language of the 1853 statute. But you don't need to go there. This is not a case about title. We never brought a quiet title action. That's something that the county raised. This is, the issue in this case is jurisdiction. Which government, federal, tribal, or state governments have the authority to enforce their laws against members of the tribe on the reservation? And if section 36 lies within the boundaries of the reservation, then under 25 U, 18 U.S.C. section 1151, it is Indian country. No, we, we, I think everybody agrees, even your opponents agree about that. And I want to be fair, you did suggest that based on race judicata and issue preclusion, we should grant a summary judgment. My case, my question is, assuming we don't buy that argument, is what you're really asking for as a jury trial on the issue of what the boundaries of the reservation are? Well, I, before I answer that question, let me just state this. And that is, we've cited case law. There's Cardinal versus United States, where the Sixth Circuit addressed this very issue. In that case, Congress had enacted the Canal Act. And it issued a patent to the state of Michigan. The President of the United States then issued an order, including the patent within the reservation. And a crime was committed on that patented land. And the individual that was charged with the crime argued that it was an Indian country. And the Sixth Circuit rejected that argument. So your, your position is the 1907 order is, is. My position is that the Secretary of the Interior, exercising the inherent authority of the President of the United States under the Midwest oil doctrine, had the authority to include fee patented land within the boundaries of the reservation, even land patented to the state. But was the land patented to the state? That's what, the, the patent to the state says the patent doesn't include certain areas, certain areas on which Indians reside, correct? Now, you're talking about the trust patent. I'm talking about the 1853 patent. The, the original patent. Well, the, the, the, the land was actually patented when the survey was approved by the, the, the, the, the lands office in 1866. Okay. And it was patented prior to the Secretary issuing his order. Okay. I understand. That patent excluded, it, it, it gave Section 36s to the state, but excluded from, and it didn't deal with them specifically. It dealt with them as a checkerboard matter. But excluded from that, that patent what? Lands on which Indians are residing? No, it didn't exclude anything. The, the, with the issuance of the, of the, of the patent, assuming it was a valid conveyance, I don't think it is, the, the state got title to the land. The Secretary then issued an order and, and, and drew the reservation boundaries to include Section 36 within the boundaries. And they're arguing that the Secretary didn't have the authority to do that. Yet they cite not one case, not one statute to support that position. But I thought they rely on this, on the 1853 Act. Pardon me, Your Honor. I thought they rely on the 1853 Act, which conveyed those lands to the state of California. Conveyed title. Title. Not jurisdiction. Did the Secretary, so, okay. Your Honors, you own, you, you, I'm, I'm assuming you own your own home. And you, you have a deed that you got from somebody that gave you a valid title to that land. Would you seriously argue that if that land was located within the state of California, that the state of California does not have the authority to enforce its laws against you? No. The state does. Not because the state owns the land, but because your land lies within the boundaries of the state. That's what happened here. I don't think they got title. But assuming that they did, and, and I don't think you have to address the title issue. The issue is, here's the land that they got a patent to under the 1853 statute, Your Honor. They claim they own it. They claim they got title to that in 1866, prior to the creation of the reservation. Who is they? The county. Right. The county claims that the state got it. The Secretary, and there's no doubts, the Secretary issued an order and drew the reservation boundary to include section 36 within the boundaries of the reservation. And under 1151, that's Indian country. Okay, so I want to make sure I understand your position. Your position is that on its face, the 1853 act or patent appeared to give title to the state of California. I don't think it even appeared to. Okay, tell me why it didn't. Well, first of all, it was, if you look at the plain wording of the statute, the statute was a conveyance of the public lands of the United States. Sections 16 and 36 of the public lands of the United States to the state of California. Okay, the United States Supreme Court answered this question in Minnesota versus Hitchcock, they said that lands under the use and occupation of an Indian. Right, and see that was the question I was trying to ask you before and we missed each other. Your position, no, well, maybe I'm wrong. Your position is that this land was never conveyed to the state of California by the 1853 patent because the government didn't have title because these were lands on which Indians had resided from time immemorial, is that? Not only that, but also there's another section, section six of the 1853 statute. You're talking about the occupation provision. Yes. It excluded, you're saying that excluded section 36 from the grant. Okay, so that's where we missed each other, I'm sorry. Not only did it exclude it, but in very expressed language, when you look at the language regarding the conveyance of 16s and 36 to the state, it says, it expressly says that it's conveying those lands unless those lands were otherwise reserved under the act. Well, it's occupied by any Indian tribe. So what do we look to to determine that? Yes. Right, and so- That was a question. So, no, we get back to, I want to understand it. Your position is these lands were excluded by the occupation provision and therefore, and then also that they were granted, made part of the reservation by the 1907 order. The patent was enormously issued to the state. Well, the patent was issued to the state in 2000. In 1866 was the actual patent confirmed. Okay, so I see where the patent on its face seems to include these lands. If we're talking about the patent from the United States government to the state of California, the patent was for all of section 36 to be used as school lands. The state would take those lands and- No, I understand. So that's where we're missing each other. You were talking about the patent and I was talking about the 1853 Act. Well, because the 1853 Act, the language actually conveys the land to the state, but it says that the state doesn't actually get its title until they go out and survey the lands and the survey is approved by the general lands office. And that didn't occur until 1866. And that's in the 1853 Act, what you just said? Yes, the 1853 Act- Fifty-three. The 1853 Act conveyed sections 16 and 36s to the state for school purposes. Except those portions occupied by Indians. Correct. And they had to be public lands in order for the state to get them. And of course, the Supreme Court says when lands are under the occupation of an Indian tribe, they're not public lands. And Congress expressly reserved all the lands that should be- What about the 1851 statute that required claims to be made within two years? Otherwise, they become public lands. We addressed that specifically in our brief. The 1853 statute only established a commission to confirm land grants that were derived from the Mexican government. And Indian tribes' lands, they hold title through what's called aboriginal title, through the doctrine of discovery. And only the United States has the right under the Non-Intercourse Act, 25 U.S.C. Section 177, to extinguish Indian title. Indian title was never extinguished here because Congress expressly preserved it and protected it with Section 6 of the 1853 statute. The Indians were occupying that land as evidenced by Kelsey. And the district court made a number of errors here. First, it made an error because there was- Well, first of all, we argued our motion for summary judgment. It was submitted. It was under submission. It was the court, after we had submitted our motion for summary judgment, that raised these issues. Never gave us- Notice never really gave us an opportunity to respond. The court saw that there was a disputed issue of fact over title. It should have denied both motions for summary judgment and set the matter for a hearing. Well, that goes back to Judge Hurwitz's original question. Is that what you want? You want to have the issue of title tried in the district court? If the court finds that it- I think the court doesn't need to go there either. I think the court can look at the order, the fact that the order was issued in 1906 and included Section 36 within the boundaries. But you're arguing- you just argued just now that what the- one of the errors the district court committed was by not hearing the issues out, just having it under submission and deciding this on her own. Yes, she did. But I- you have two options. And I would like you to go for option A, not option B. And option A would be to say, de novo, we're looking at the evidence in the record. Section 36 was included within the boundaries of the reservation. All right. I understand your arguments. I think we all do. So can you- there's something about this case that strikes me as just odd. Like, there has to be something else going on here, something behind this case. And I mean, how did it devolve into a question of who owns the lands? Because the county raised it in their briefs. We didn't bring a quiet title action. We didn't raise the issue of title. We believe that under California's- What did you sue the county for? We brought actions for declaratory and injunctive relief for the court to determine that the section 36 was Indian country under 1151. That as Indian country under California versus Cabazon, that the vehicle code, the California vehicle code provisions that were being enforced against the tribal members were civil regulatory laws, and that under public law 280, they had no jurisdiction to enforce those laws. We sought an injunction to a permanent injunction in joining them from enforcing those civil regulatory laws against tribal members, driving within section 36 on the reservation. And we brought an action under 42 U.S.C. section 1983, claiming that they deprived those individual tribal members of rights and privileges that were secured under the constitution laws and the right to be free of state regulation and control. As the Supreme Court says, Indians have that right. It's going back as far as 1832 in Worcester versus Georgia. Was this a real problem, traffic stops? Yes, because- I mean, were there just these two, or were they constantly, was the sheriff constantly stopping people? Constantly stopping. The northern portion of the reservation is where all the Indian housing is. And the only travelable road to be able to get to that portion of the reservation to get down to where the tribe has all of its businesses, where it has its grocery store, where they can shop, where it can get medical attention, where it can grab its ferry, the Indians have to travel through section 36. It's the only way they can get there. I think it's one of the reasons why, I mean, there's a number of reasons why the secretary included section 36 within the boundaries, but just because of the topography, the Indians need section 36 to make the reservation a viable homeland. They can't get to their businesses and their jobs without driving on that road. And the sheriff just sat there and waited for what he thought were Indians. Well, except you lost your racial animus claim and are not appealing that, correct? Pardon me? The district court found no evidence of racial animus. And you don't challenge that finding on appeal? I do not, but we still believe we have a 1983 cause of action. I understand, but is that the reason, was that the genesis of this, that your clients thought they were being singled out because of that? Yes, we thought he was the sheriff and the deputies of racial profiling. Keep in mind, the district court even dismissed our 1983 cause of action as to the citations that the sheriff clearly issued to Indians on reservation trust land, and that was an error. She shouldn't have done that. She should have at least set that matter for a hearing in the tribe. That's Lopez? That's Lopez. That's Naomi Lopez. Because it wasn't clear where Ochoa was arrested. Well, he was on section 32, which was owned by the United States of America, in trust for the tribe within the boundaries of the reservation. So there are two people that were taken to the reservation? Yes, there were two, your honor. Could I ask just one more question about this phrase in the 1853 Act, which says that it shall not be construed to authorize any settlement to be made on any tract of land in the occupation or possession of any Indian tribe. Is, are the words occupation and possession of any Indian tribe terms of art that suggest title? There are other cases dealing with similar language which say that, that it deals with Indian title. Yes, those are terms of art that, that you'll find that the President and, and the Secretary and Congress have used many, many times when they were speaking of an Indian tribe's aboriginal title, the right of use and occupancy, which the Supreme Court is as sacred as the non-Indian's fee title. And that's what Congress was trying to do there. They were trying to make sure that the Indian's right entitled to the land, the right of use and occupancy, which Mr. Kelsey, Congress's special agent in this case, found that the Chimoabes from time immemorial, since pre, pre-memorial times, have occupied that land along the Colorado River, including section 36. Is it, yes, you are. All right, thank you. You're, you're almost five minutes over your time. So. Thank you. Thank you. Good morning, your honors. May it please the court. Sean Murphy on behalf of the county of San Bernardino and the individual defendants. First point I want to address was an issue raised by counsel for the tribe when they're talking about a challenge to title in California and whether or not the patent was properly issued. The district court specifically remarked on this claim. We had originally filed a motion under rule 19 to dismiss for an indispensable party, that being the state of California. The tribe took the position that we're not challenging title. And the motion was denied specifically on the basis that they were not challenging title in California. Well, but the, put that aside for a second. Well, I just want to point out, because in the argument, there is an argument that they are challenging title. Well, I mean, they're, they're, they're not challenging title. They're saying this is Indian land. Correct? Yes, but they're saying- You're saying no, you're saying no, it's not. It's California land. Well, they're saying California never got it, in part. No, but as I understand his argument, and I put aside the 1850, what happened in 1853 and 1866. His argument is that in 1907, followed by the Secretary of the Interior ordered that a reservation be set aside for the Chemehueve, and that there's no doubt that the 1907 order included the land on which this ticketing is taking place. Put aside the section 32 ticketing for a second. Why isn't that a good argument? Well, let's go back to 1853. No, I don't want to go back to 1853. I'm giving you 1853. I'm giving you 1853 for purposes of my argument. It's not a good argument. I'm assuming that you got the land in 1853, notwithstanding, notwithstanding the act that said it didn't include any land on Indians. The Secretary of the Interior issued an order in 1907, saying this was reservation land. So is, your, your position must be that that order was invalid? To the extent the Secretary purported to include section 36 in the order, it is unlawful. It does not have the right to- Don't, don't you have to, don't you have to go someplace and attack that order, rather than arrest people on the land? No, because if we look at the, the authorization in which that order was issued, which is the Mission Indian Relief Act, the Secretary was authorized to set aside particular lands that the particular band or tribe had occupied. No, but I'm asking you a different question. I understand what you're, no, no, listen up, no, I get to ask the questions. This, you all, we all agree that the 1907 order includes this land, don't we? I think that's the best, I think, I think that's the fairest interpretation. Physical, physical description is this land. I understand.  So, my question's a very, just a procedural one. We have an order of the executive branch setting aside a reservation. You're contending, in this case, that that order is invalid for various reasons. Don't you have to go into federal court and bring a suit attacking the validity of the reservation order, rather than just simply arrest people on the reservation and, and force the other folks to fight it? In other words, how can you, how can you ignore that 1907 order? Because the order merely establishes the existence of the reservation. It does not establish the boundaries of the reservation. Under MIRA. Well, but that's why I asked you the question. The 1907 order appears to cover section, this section 36, does it not? It does. Okay, so you may think it's invalid, but it's sort of a strange way for a state or account, a subdivision of the state, to attack a federal governmental order by disobeying it and forcing the people who are disadvantaged because of your disobeying it, to come to court to assert their rights. Don't, doesn't the state have to go into federal court and attack the order somehow? No, and I think the court's question presumes the definition of the boundary of the reservation. That's why I asked you the first question. So tell me what, tell me why the 1907 order doesn't include this area in which your clients are making arrests. Because the 1907 order establishes the existence of a reservation, purports to set aside land, which under the legal description, once the boundaries are established, would include section 36. But under the Mission Indian Relief Act and the amendment to it subsequent, you establish the boundaries by issuing a trust patent. The secretary has to issue a trust patent. That was not issued until 2010, and it expressly excludes section 36. Now, the tribe had identified and relied upon Arizona versus California, both one and two, claiming that the Supreme Court has acknowledged the 1907 order. Ignore for a fact that 1907 order is never mentioned in either one of those cases. But what is mentioned is the court expressly saying that these boundaries are not established. So you're coming into- Although, but under your theory, and Arizona versus California is a case I'm fond of and familiar with since we won. But under your theory, the court was wrong. There was no Indian reservation at the time Arizona versus California was decided. There was a reservation. The boundaries were not firmly established because they couldn't be established- So it was a reservation without boundaries? What is that? The statute requires a trust patent to establish the boundaries. So what were the boundaries of the reservation when Arizona versus California were decided? The boundaries at the time would have been whatever the secretary had identified. But as the court acknowledged, reservation boundaries changed frequently, which is why they didn't acknowledge secretarial orders as firmly establishing the boundaries of a reservation because they were subject to change. But it wasn't important in that case because it was about water rights. Correct. So we don't know. I'm just trying to understand you. Your argument is that the reservation was never established, or is it that it was established and reduced by the patent that was issued later? I'm trying to understand your argument. The reservation was established. The boundaries were not finally established until 2010. But doesn't a whole bunch of case laws say that if there was a reservation, if Indians lived on land from time immemorial, that a patent can't reduce that? I don't think that applies to this case, Your Honor. And if I can make a quick departure, getting back to 1853, that statute did not create reservations. I agree. That statute simply prevented white people from squatting on land that Indians had been on in order to establish preemption rights. And then the act of 1864 extinguished all aboriginal rights, except for the four parcels of reservation that were expressly created in that statute, not one of which was for the Chemehuevis. It was Tule River, Hoopa Valley, and two others. Those were the four reservations that Congress created in 1864 and extinguished all other aboriginal rights. So then your argument is that even if the Chemehuevi had lived on this land from time immemorial, it's not Indian land? Correct. They didn't make a claim, which they're required to do. And there's significant case law on that issue. 1864 extinguished aboriginal rights, and all other reservations that had been in existence were ordered to be parceled up and sold. And three, the conveyance to the state of California, once that survey was made, conveyed it to the state and took it from public lands as of 1895. So what happened in 2015 or so that all of a sudden the sheriff and the deputies in San Bernardino start arresting the Indians driving through Section 36? I don't know that they all of a sudden started citing them for traffic violations, but traffic violations were issued to those members of the tribe. What highway? 94? I'm not that familiar with the geography, Your Honor. I don't know what the highway is. Which one's the sheriff? Is it McMahon? Who's your client? The sheriff would be... It's been different sheriffs, I assume, during the time of the... No, I'm wondering who's the sheriff. At the time, it was John McMahon, Your Honor. Okay, he's no longer sheriff? I'm just saying I don't know. Can we take a simple part of this case? What about the... To the extent that people were ticketed inside, not in Section 36, but in other parts that nobody seems to dispute are parts of the reservation, why weren't those tickets inappropriate? They weren't. I think we addressed those outside of the context of this litigation, Your Honor. The county did not... There were two types. There were tickets that were issued for violations that occurred within the reservation, and those were withdrawn. Right. There were violations that occurred on Section 36, and the person was stopped in a section within the reservation. Okay, so why do your clients have authority to detain people inside the reservation for traffic violations occurring outside? They have authority to issue tickets for violations that occur on state or county property. I understand, so that... The fact that they stopped... Assuming they have authority to issue the citations for something that happened in Section 36, do they have the authority to detain Indians inside the reservation for traffic offenses that occurred outside? I believe they do, Your Honor. And what do you base that on? Well, in all honesty, I don't have that answer because that's not an issue that we ever really discussed in the lower court, nor is it one that has been principally argued by the... But as to these two individuals that your friend identifies, your position is that they were ticketed for something that occurred outside the reservation but detained inside? Correct. And your position is that local police can go inside a reservation and detain people? They can issue a citation for... I didn't know what I'm asking. They make broader allegations. They say they were detained. Some of them say that their cars were moved. So I'm quite... To the extent that constitutes a detention, then yes, Your Honor. Okay. And I want to get back to one of the questions that you asked about where the appropriate venue is. And I'll use the example that Mr. Marston gave. If I have a piece of property and it's been mine, and someone is telling the public that a corner of that belongs to them, I don't believe I have an obligation to go dispute that claim. If they have a claim to my property, then they need to bring an action to recover the property from me. Yeah, this is a little bit different. They have an order. No, no, just let me finish. They have an order from the Secretary of the Interior that says this is their property. You have a legal argument about why it's not. So I'm not sure on who the burden rests here. What troubles me is that the district court looked at the Massey report, assuming that where people resided from time immemorial is an issue. If it is an issue, she said, well, that's hearsay. How else are you going to establish where people resided from time immemorial other than hearsay? It's kind of two parts. So in 1895, when the land that's surveyed becomes conveyed as a final conveyance to the state of California, it's removed from the public lands. The Secretary of the Interior has no legal authority whatsoever. That's a legal argument. That's a legal argument. I'm asking a different question, a hearsay argument. Now getting to Kelsey, Kelsey makes two mistakes. One, he reports that the land has never been surveyed, when in fact it has been surveyed. And I think had she- Just because he makes mistakes doesn't mean that the whole document should be excluded from evidence. And I'm not suggesting that, Your Honor. To be fair, you never argued it. The district judge did it on her own. Right. No, absolutely. So are you contesting it now? Do you think the Kelsey evidence is admissible? The point of his comment about not being surveyed is more kind of a historical fact of interest. With respect to the hearsay, yes, we would suggest that it is still hearsay. Because you don't have anyone with any first-hand knowledge in 1907- But how would you? That's Judge Hurwitz's point. It's from time immemorial. Who's around in 1907 that was, that was not aware of it? There when time immemorial began. But this sort of goes back to my earlier point. Any aboriginal title that existed in 1853 was extinguished. A, by not bringing a claim, and also by the act of 1864. So now you've got- And so there is no aboriginal title. So now Kelsey goes out with his own personal observation and see where the Indians are residing. And that's how he establishes where they have been residing. He also talks to them. He says he does. He does talk to people as well. And asks if you've lived here a long time, and did your family live here? And from that, he concludes that they've been there from time immemorial. Well, in a certain point in time, I mean, Native Americans had the entire continent from time immemorial. So when they're being granted reservation rights, they're only going to be given the rights at which they are occupying that land traditionally. But seriously, not back in time, because then none of us would have any of the property. I know time is out. Can I ask one more question? Go ahead. I mean, I'm going to give the other side a little bit time too. I'm back to your first point. And this is what's troubled me about this case from the beginning. We have a dispute about traffic tickets. And inside that dispute, we're being asked to adjudicate a lands dispute. Should we remand and say, bring the state of California in? And if the tribe and the state want to fight about the boundaries of the reservation, they ought to do so in a full-blown title action? I know your position is the state would win that. But I must say, I'm bothered by the federal courts adjudicating the boundaries of a reservation in the context over a fight over traffic tickets. I would say my first response was we filed a motion under Rule 19 to join a necessary and indispensable party. And the court denied the motion, because I do think the state should carry its own water. But having the district court denying that motion, we were left to basically examine the historical record. It strikes me. Why is this a federal? What body normally determines title? Isn't it the federal courts? Well, I think some of the cases that have been cited do talk about judicial determination, especially like in Arizona versus California. They talked about certain boundaries being judicially determined. And for that purpose, the Supreme Court recognized those in allocating the water rights. But for those that were secretarially determined, they did not acknowledge those as established boundaries, because they were subject to change. So I think it is a federal court that would review that issue. In effect, what your client is saying, and I'm trying to summarize the argument fairly, is that the 1907 reservation order is, to the extent it purports to include these lands, is illegal. Correct, because the secretary did not have lawful authority to include it. And that may or may not be. But adjudicating it in the case where the secretary is not a party, or finding a secretary's order illegal in a case between the tribe and a local sheriff bothers me. Is there anything further, Your Honor? Does anyone have any further? No, OK. Thank you. Thank you. I'll give you two minutes. Well, this case is puzzling. This is not uncommon. For 111 years before Congress took away from the President of the United States the authority to create Indian reservations, the President created Indian reservations. And the Secretary, exercising the inherent authority of the President, created Indian reservations. I know, but his argument is that the Secretary didn't have the authority to do that in this case because of the various statutes, 1851, 1853, and I think 1866. And I'm going to answer that question. For 111 years, the President has been creating reservations including fee lands within the boundaries of the reservation. They're called inholdings. It was done all the time. And if you look at the Supreme Court's decision in Midwest oil, what they said was, you know there's no statute that authorizes the President to do this. But Congress knew the President was doing this and acquiesced in it. But fee lands aren't Indian lands for purposes of your argument, are they? Fee lands included inside the reservation are Indian lands? Again, this case is not about title. It's about jurisdiction. See if you can answer my question. Let's assume that these... Fee lands are not owned by the Indian country. Are they Indian lands for purposes of jurisdiction? So that if there's a fee land inside the reservation, local authorities cannot enforce state laws on it? 18 U.S.C. Section 151. All lands within the boundaries of an Indian reservation. Notwithstanding... Within. That's the problem. We're talking about... You're talking about fee lands included within the boundaries. This is at the boundaries, is it not? It's within the boundaries. Well, if you win, it's within the boundaries. If it's fee land, it's not within the boundaries. Exact same argument. Just see if... I'm interested in an answer, not the argument. Am I right that if this is fee land, it's not within the boundaries of the reservation? No. It's within the boundaries. Why? Is it surrounded by the reservation? Yes. With Congress... No. This particular piece of land, this part of Section 36, my understanding is it's on the upper end of the reservation. It's not surrounded by reservation. Okay. If my pad is the reservation boundary, Section 36 is there. Is at the edge of it. Yeah. I mean, one of the edges... Okay. That's the answer to the question I needed. So it's not, unlike the statute, which says that when fee lands are within the boundaries of a reservation, so if it were in the middle, we'd all agree that federal law wouldn't apply. But if that's not included in the reservation, then it's not within the boundaries. But the Secretary withdrew it and said it's part of the reservation. No, I understand you. That's the legal argument you've been making. I understand it perfectly. What I'm trying to figure out is where this land is, and it's not within the boundaries if it's not in the reservation. But the Secretary put it in the reservation. Also, the Secretary didn't issue this order under the amendments to the Mission Indian Relief Act, as opposing counsel just stated. The amendments to the Mission Indian Relief Act were not even enacted at the time that the Secretary issued the order. Yes, he issued it in anticipation. He knew a bill was pending before Congress, but the Secretary created this under the inherent authority of the President of the United States under the Midwest Oil Doctrine. And we have cited cases that have stated, the Sixth Circuit has stated in no uncertain terms, that a patent to a state issued prior to the creation of the reservation and then included within the boundaries of the reservation later by a presidential order is Indian country. And that's what we're saying. We're saying you don't need to determine ownership for you to hold that this is Indian country because the Secretary put the land inside the reservation boundaries. But if you feel that the determination of title is necessary, then yes, remand it back to the district court. We want our hearing. We want our opportunity to prove our case, and we believe we can prove it. When we remand it, should we also tell the court that it must join the state? Well, there's a federal statute. It isn't that issue, and it isn't before you, and it hasn't been briefed, that establishes who has the burden of proof in a dispute over title between an Indian tribe and state. Why wouldn't that be in the briefing or the arguments? It's because of the way of the nature of this happened. These were all issues that were raised by the Judge Sui Sponte on her own after the facts had been stipulated to and the case had been briefed and argued. All right. Thank you, Counsel. Can I ask just one more question? Sure. Could the state of California, assuming that it had owned this land in the broad sense, could it have agreed to cede whatever it had to the tribe? And did you ask? Our position is that what it could have done and should have done, knowing that there were Indians occupying the land, they should have selected in lieu lands. And I can tell you this. We're most certainly not interested in divesting anybody that has a home out on Section 36 of title. If this case, I can represent to this court that the position of my client is that if this case goes to trial and we prove, and I think we will prove, that that patent was erroneously issued, we will turn around and we will issue deeds to those individuals to ensure that they have title to their land. For us, it's a matter of jurisdiction. It's the last vestiges of our sovereignty. It's our right to govern ourselves on our land, free estate regulation and control. They don't have the right to enforce their laws against us. If there's anything left of tribal self-government, it means we have the right to govern ourselves on our reservation under our laws. It's Indian country. The Secretary withdrew it. He included it in the boundaries. The Supreme Court of the United States has upheld the authority of the Secretary to do what he did. It's Indian country, and they have not proven that it's not. All right. Thank you, Counsel. Chemi, Wehvi, Indian Tribe v. McMahon will be submitted, and this Court will take a five-minute recess. Thank you.
judges: Wardlaw, Hurwitz, Korman